BOJANGLES, INC., Plaintiff-Appellee, v. THE CITY OF ELMHURST, Defendant-Appellant.

Second District (1st Division) No. 75-191

Opinion filed June 9, 1976.

Peter W. Ernst, of Elmhurst, for appellant.

Robert C. Liston, of Wheaton, for appellee.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

This is an interlocutory appeal by the defendant, City of Elmhurst, from several orders of the trial court culminating in, and including a temporary injunction enjoining the defendant from enforcing an ordinance, as applied to plaintiff, which prohibits the charging of an admission fee by certain classes of liquor licensees. The basic issue presented is whether the trial court erred in entering the orders appealed from.

The plaintiff, Bojangles, Inc., operates a business establishment which is commonly known as a discotheque in the City of Elmhurst. The establishment sells alcoholic beverages under a Class A-2 liquor license

and charges its patrons an admission fee for the use of a portion of the premises where music and dancing facilities are provided. On March 1, 1975, shortly before plaintiff commenced its business operations, a certain ordinance of the City of Elmhurst became effective which prohibited Class A and E licensees from charging an admission fee, minimum or cover charge. On March 25, 1975, one day prior to the date plaintiff commenced its operations, plaintiff filed a petition for a temporary restraining order (TRO) and an *ex parte* emergency matter, alleging that the subject ordinance was unconstitutional and praying for an order to be effective for 10 days enjoining the defendant from enforcing the ordinance against plaintiff. On the same date the trial court entered a TRO as prayed for in plaintiff's petition. The next day, March 26, plaintiff filed a second petition for a TRO as an *ex parte* emergency matter, alleging that when a certified copy of the March 25 order was served on the defendant, defendant advised plaintiff of its intent to suspend or confiscate plaintiff's liquor license and/or other business licenses to prevent plaintiff from commencing business. Plaintiff then prayed for an order to be effective for 10 days enjoining defendant from revoking, suspending, withdrawing or removing plaintiff's liquor license and/or other business licenses or permits. On the same date the trial court entered a TRO as prayed for in plaintiff's petition. Also, on March 26, plaintiff filed a third petition for a TRO, also as an *ex parte* emergency matter alleging that when a certified copy of the second TRO was served upon the defendant, defendant advised plaintiff of its intent to use "any means whatsoever" to prevent plaintiff from operating its business. Plaintiff then prayed for an order to be effective for 10 days enjoining defendant from interferring with plaintiff's business operations. A hearing was held on March 26 in which testimony was given by two attorneys for the plaintiff and by the attorney for the defendant. The trial court then entered a TRO on March 26, which was not filed until March 27, as prayed for in plaintiff's petition. The next day, March 27, the defendant filed answers to plaintiff's first two petitions and a motion to vacate the two previously entered TROs. Following a hearing the trial court denied the motion to vacate.

Thereafter, plaintiff filed a petition for temporary injunction and, following entry of an order on April 3 extending the previously entered TROs for an additional 10 days, a hearing was held on plaintiff's petition for temporary injunction on April 9. The testimony of several witnesses was presented at the hearing on plaintiff's petition for temporary injunction and on April 17 the trial court entered a temporary injunction, *nunc pro tunc* as of April 14. Thereafter, defendant filed a motion to dismiss plaintiff's four-count complaint and, on May 9, filed its notice of interlocutory appeal. In the notice of appeal defendant specified that it

was appealing the three TROs, the order denying its motion to vacate the TROs, the order extending the TROs and from the temporary injunction order of April 17.

Prior to considering the merits of this appeal, we shall first consider a motion which we have ordered taken with the case. By this motion plaintiff seeks to strike defendant's appeal from the orders of March 25, 26, 27 and April 3 on the ground that defendant's appeal from these orders was not properly perfected under Supreme Court Rule 307 (Ill. Rev. Stat. 1975, ch. 110A, par. 307).

We first observe that this motion has not heretofore been disposed of by this court as defendant contends; rather, this court has, by order, denied a separate motion to dismiss, filed by plaintiff subsequent to the filing of the motion which we presently decide. The denial of this separate motion to dismiss in no way affects the instant motion.

Supreme Court Rule 307 provides for an interlocutory appeal as of right from an order of the trial court "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." With respect to perfecting an interlocutory appeal as of right, the rule states, in pertinent part, that:

"(a) * * * The appeal must be perfected within 30 days from the entry of the interlocutory order * * *.

(b) Motion to Vacate. If an interlocutory order is entered on *ex parte* application, the party intending to take an appeal therefrom shall first present, on notice, a motion to the trial court to vacate the order. An appeal may be taken if the motion is denied, or if the court does not act thereon within 7 days after its presentation. The 30 days allowed for taking an appeal and filing the record begins to run from the day the motion is denied or from the last day for action thereon."

■■ Since the notice of appeal was filed in this case on May 9, it is immediately apparent that defendant has failed to perfect its appeal under Supreme Court Rule 307(a) from the four orders which are the subject of the motion to dismiss. Further, since the April 3 order was not entered on an *ex parte* application, Rule 307(b) has no application to it and, as the appeal was not perfected within 30 days of the entry thereof, the motion to dismiss the appeal from the April 3 order is therefore granted.

■■ The orders of March 25 and 26 were entered *ex parte* and defendant moved to vacate and dismiss these orders on March 27. On March 27 the trial court denied defendant's motion. Under Supreme Court Rule 307(b) the 30-day period allowed for taking an appeal from the orders of March 25, 26 and 27 began to run on March 27. In addition, the third TRO, which was entered on March 26 but not filed until March

27, was entered on *ex parte* application although a hearing was held thereon. Defendant neither moved to vacate this TRO nor perfected its appeal therefrom within the applicable time limits therefor. The notice of appeal filed May 9 was, therefore, filed too late to perfect the interlocutory appeal from these several orders. Plaintiff's motion to dismiss the appeal from the orders of March 25, 26 and 27 and April 3 is therefore granted.

Our disposition of plaintiff's motion to dismiss renders unnecessary a determination of the issues of whether the petitions in support of the TROs were properly verified and whether defendant was entitled to notice of the filing thereof. It is clear that the appeal from the temporary injunction order of April 17 was properly perfected. Defendant's basic contention with respect to this order is that plaintiff has failed to establish several of the requirements applicable to the granting of injunctive relief.

Analysis of defendant's contentions requires a brief recitation of the evidence adduced at the hearing on the petition for temporary injunction. The witnesses at this hearing included the president of the plaintiff corporation; the mayor of Elmhurst, who was also its liquor control commissioner; the fire chief of Elmhurst; and the superintendent of building construction, who was also the chief of the Bureau of Fire Prevention. From the testimony it appears that in August, 1974, one Thomas DuBois, now president of the plaintiff corporation, contacted various officials of Elmhurst regarding his intent to establish a dram shop within Elmhurst to be operated as a discotheque. In a meeting with Mayor Fick in September, 1974, DuBois was advised that, due to the considerable problems which the City had with dram shops which had entertainment in the form of music and dancing, city officials were considering several proposals to regulate and restrict such activities. DuBois was advised that if he were to open a dram shop in Elmhurst that there would possibly be some restrictions placed upon the form of operation. Thereafter plaintiff executed a lease for its premises and began remodeling. In September or early October, 1974, plaintiff received its liquor license. In January 1975, when plaintiff's remodeling was about 75% completed, the subject ordinance was passed, although it did not become effective until March 1, 1975. Near the effective date of the ordinance plaintiff was advised by the city attorney that the ordinance would be enforced against plaintiff.

It appears that there are two other businesses in the City which were affected by this ordinance.

DuBois testified that customers are charged $1 per person to enter the dancing room and that if plaintiff were to stop charging the admission, "It would give me a business loss, which is the difference between making money and losing money." He further testified that, "It is the dancing that

brings people in," and that, "Practically 95 per cent pay the minimum and go to the rear room." In addition, DuBois stated that the only way he knows of measuring the loss of revenue which might be suffered as a result of suspending the charging of covers or admissions is by the amount he had been able to take in in the last two weeks, and that the business could fluctuate in the future due to other reasons. Furthermore, DuBois stated that his business turns away many people each night in an effort to avoid any problems.

Mayor Fick testified that the City had had police problems and complaints with two local dram shops which offer entertainment to young people, and that the City desired to alleviate such problems and desired to return to the neighborhood tavern concept in enacting the instant ordinance. He testified that, "It was my opinion * * * that this proposal should be considered by the council as a means of eliminating a method of doing business with the City * * *." The mayor also testified that he did not issue a dancing license to plaintiff because he was "outraged" that plaintiff was proceeding with its action against the City without notice and that " * * * the very serious question in my mind, under the broad discretion, was whether in fact this business should start." The mayor also testified that since the ordinance went into effect there had been a lessening of problems in the liquor license area. He also stated that it was impossible to state whether plaintiff has any known danger to the public because of its short business history.

At the close of the hearing the trial court entered the temporary injunction from which defendant appeals.

Defendant first argues that plaintiff has an adequate remedy at law, by raising the validity of the ordinance as a defense should defendant attempt to prosecute plaintiff for violating the ordinance. In support of this position, defendant has cited *H. G. Goelitz Co. v. Town of Cicero* (1960), 28 Ill. App. 2d 225, 171 N.E.2d 233, and *Mister Softee v. City of Chicago* (1963), 42 Ill. App. 2d 414, 192 N.E.2d 424. In response, plaintiff argues that these cases have no application to the present situation in which plaintiff has challenged the validity of the ordinance, enforcement of the ordinance would prevent the profitable operation of plaintiff's business, and where plaintiff has alleged and offered some proof of abuse of discretion by officials of the defendant City.

■■ It is established that existence of a remedy at law is insufficient to deprive an equity court of jurisdiction unless that remedy is also "adequate." In determining whether a remedy is adequate, the question is whether the remedy at law "compares favorably with the remedy afforded by the equity court." *(Johnson v. North American Life & Casualty Co.* (1968), 100 Ill. App. 2d 212, 218, 241 N.E.2d 332, 335.) This

proposition was stated in *McGinniss v. First National Bank* (1919), 214 Ill. App. 295, 299, *as follows:*

> "But the existence of a remedy at law does not deprive equity of jurisdiction unless such remedy be adequate. That is, it must be clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the remedy in equity. [Citations.]"

Analysis of the cases cited by defendant demonstrates significant differences between them and the present situation. In *H. G. Goelitz Co.* plaintiffs did not contest the validity of the ordinance in question nor show any irreparable injury; plaintiffs merely alleged that they had not violated the ordinances involved. In *Mister Softee,* plaintiff sought injunctive relief against enforcement of a certain noise ordinance, which certain operators were alleged to have violated. Plaintiff alleged and offered evidence of reduced revenues in the sale of soft ice cream when no audible advertising was used and complained that the ordinance was vague. The appellate court held that, in light of a recent Illinois Supreme Court opinion, there was no debatable constitutional question as to the validity of the ordinance and that there was no evidence that plaintiff would be put out of business by application of the ordinance. The court also noted that courts of equity lack jurisdiction to aid parties which are in violation of public law. The court held that plaintiff could continue its business operations and contest the ordinance in defense to the pending charges.

■■ In the instant case we find that plaintiff does not have a remedy at law sufficient to deprive a court of equity of jurisdiction. It appears that should plaintiff be required to violate the ordinance to create a forum for litigation of the validity of the ordinance, that plaintiff will probably be out of business.

Defendant's next contention is that plaintiff has failed to show a property right affected by the ordinance in that the operation of a dram shop is a privilege rather than a right. Plaintiff, in response, concedes that a liquor license is a privilege and not a right but argues that the subject matter of this litigation is not liquor licensing as such, but the reasonableness and validity of including the regulation of other activities within the scope of liquor licensing.

■■■ In our view, plaintiff has shown a sufficient interest affected by the subject ordinance to entitle it to injunctive relief. In *Shoot v. Illinois Liquor Control Com.* (1964), 30 Ill. 2d 570, 575, 198 N.E.2d 497, 499-500, the Supreme Court stated:

> "Notwithstanding the fact that the State may impose regulations on the liquor traffic more stringent than would be permitted or

allowable in other businesses, the imposition of such restraints must nevertheless be in keeping with constitutional restrictions. *(Weisberg v. Taylor,* 409 Ill. 384, 387.) * * * Along the same lines, it has been reflected by judicial decision that when the liquor business is lawful, as it now is, the regulations provided therefor must be pursuant to a legitimate exercise of the State's police power, which precludes regulation that is arbitrary and discriminatory. [Citations.]"

Thus, since plaintiff alleged and offered some evidence in support of its contentions that its business will be forced to close by enforcement of the ordinance and that official discretion was abused, we find that plaintiff has shown a property right entitling it to injunctive relief.

Defendant's final contention is that the ordinance is presumed valid, that it is a legitimate exercise of the police power and that plaintiff has failed to establish a *prima facie* case for ultimate relief. In support of this contention defendant refers us to the following language found in *Knuppel v. Adams* (1973), 12 Ill. App. 3d 708, 712, 298 N.E.2d 767, 770:

"A temporary injunction should not issue on the basis of a statute alleged to be unconstitutional unless such unconstitutionality appears clearly on the face of the statute. Statutes are presumed constitutional and courts are to exercise caution in issuing preliminary injunctions especially where defendant seeks to exercise a legal right. [Citation.]"

We first observe that, with regard to this issue, and with regard to this entire appeal, our function on review is a limited one. In *Grillo v. Sidney Wanzer & Sons, Inc.* (1975), 26 Ill. App. 3d 1007, 1011, 326 N.E.2d 180, 183, the court observed that:

"We first must stress that the substantive issues of the instant case are not before us for resolution. They were not decided in the trial court, and we will not decide them now. The sole role of an appellate court in addressing the grant or refusal of an interlocutory decree is narrowly restricted to a determination of whether the judge correctly exercised his broad discretionary power. *(Toushin v. City of Chicago,* 23 Ill. App. 3d 797, 320 N.E.2d 202.) * * *

\* \* \*

The purpose of an interlocutory, preliminary or temporary injunction is quite clear. Such a decree is granted before a trial on the merits of a case for the purpose of preventing a threatened wrong, or any further perpetration of injury, in order to preserve the status quo with the least injury to the parties concerned. *(John Deere Co. v. Hinrichs,* 36 Ill. App. 2d 255, 183 N.E.2d 309.) It is not

the purpose of such an injunction to determine any controverted rights nor to decide the merits of a case."

Along similar lines, attention is directed to the following statement found in *K.F.K. Corp. v. American Continental Homes, Inc.* (1975), 31 Ill. App. 3d 1017, 1020, 335 N.E.2d 156, 158:

"The issuance of a preliminary injunction is within the sound discretion of the trial court upon a *prima facie* demonstration of necessity and a court of review will not set aside the injunction order unless there is a manifest abuse of discretion or an error of law. *(Board of Education v. Peoria Education Association,* 29 Ill. App. 3d 441, 413, 330 N.E.2d 235, 236-37 (1975).)"

In view of our limited role on review, we find that plaintiff has sustained its burden with regard to this issue. Without expressing our views of the merits of this case, we note that the subject ordinance does not prohibit the doing of any act which in itself might be subject to control under the police power of the City but merely prohibits certain dram shops from charging admissions for the express purpose of "eliminating a method of doing business." In such circumstances, we deem it advisable to maintain the *status quo* until a hearing may be held upon the merits of this controversy.

The orders appealed from are, therefore, affirmed.

Affirmed.

SEIDENFELD and HALLETT, JJ., concur.